## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELENA LAMB, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br>      v.<br><br>THE COOKWARE COMPANY (USA), LLC<br><br>      Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Elena Lamb ("Plaintiff"), individually, by and through her undersigned counsel, brings this class action lawsuit against The Cookware Company (USA), LLC ("Defendant" or "Cookware"), on behalf of herself and all others similarly situated, and alleges, based upon information and belief and the investigation of her counsel, as follows:

### INTRODUCTION

1.      Cookware is the manufacturer of several brands of cookware, including a line of Blue Diamond Enhanced Ceramic Non-Stick Pans ("Pans" or "Products").

2.      Blue Diamond is heavily advertised on TV and through social media. At its core, Blue Diamond claims to be a ceramic, diamond infused, nonstick pan with coating 5 times harder, 4 times faster, and 10 times longer-lasting than traditional nonstick coatings.

3.      Despite Defendant's representations, however, the Pan fails to live up to its most basic and fundamental purpose – to provide users with a nonstick cooking experience.

4.      Plaintiff purchased the Pan, reasonably expecting it would provide for a nonstick cooking experience. Instead, she was immediately confronted with food that stuck to the Pan,

necessitating a messy and difficult clean up. The Pan failed to perform as promised, undermining the very purpose for which it was purchased.

5.     Plaintiff, on behalf of all others similarly situated, alleges claims for breach of the Magnuson-Moss Warranty Act, express warranty, implied warranty of merchantability, Florida's Deceptive and Unfair Trade Practices Act, and unjust enrichment. She also seeks damages, and injunctive and declaratory relief.

## PARTIES

6.     Plaintiff Elena Lamb is a resident of High Springs, Florida. She purchased a Blue Diamond nonstick pan from Walmart in 2019 for approximately $19.88.

7.     Ms. Lamb read and relied on the representations made on the Product label in advance of her purchase. These representations were material in her purchasing decision. In particular, Ms. Lamb relied on the fact that the Product was advertised and sold as a "nonstick" pan.

8.     Ms. Lamb used the Pan a total of 3 times, primarily to make eggs. Although she used the Pan according to the instructions, each time food stuck to the pan, forcing a difficult and messy clean up. Ms. Lamb subsequently stopped using the Pan and has since discarded it.

9.     Defendant The Cookware Company (USA), LLC is a Delaware limited liability company headquartered at 94 N Broadway, Irvington, NY 10533. Defendant is a global company specializing in the production and distribution of cookware. It owns 12 different product lines including Blue Diamond.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive

of interest and costs. There are thousands of putative class members, at least some of whom have different citizenship from the Defendant.

11.     Due to the Defendant's residence in this District, the exercise of jurisdiction by this Court is just and proper.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## STATEMENT OF FACTS

### A.  NON-STICK PANS

13.     At a microscopic level, a typical metal pan has a surface that is ragged, and covered with thousands of nooks and crannies. When heated, the metal expands and these pores enlarge, allowing food to seep in, solidify, and stick. To minimize that sticking tendency, a standard metal pan can be covered with oil in a process called "seasoning," which fills in the metal's fissures so that food can't enter. Alternatively, one can use a pan that has been industrially coated with a nonstick material which fills the pores of the pan, making its surface smooth and virtually nonstick.[1]

14.     Industrial coating for nonstick pans is typically one of two varieties: Polytetrafluoroethylene ("PTFE"), a synthetic polymer that repels water and reduces friction (e.g. Teflon); or a ceramic-like coating called Solution-Gel ("Sol-Gel"). The Sol-Gel coatings don't use polyfluoroalkyl polymers like PTFE, but instead are silica-based and are often marketed as being greener and healthier than PTFE pans. *Id.*

---

[1] The Science of Nonstick Cookware, Here's what you need to know about how it works, how to use it, and how to care for it, Fine Cooking,  https://www.finecooking.com/article/the-science-of-nonstick-cookware

15.    While foods prepared using conventional pans may also be prepared on nonstick pans, the most ideal foods for use with nonstick pans are those that require low heat and have a tendency to stick (e.g. eggs or fish).

16.    At any given time, there are a plethora of nonstick pans for consumers to choose from. They compete on performance claims, the most important of which is the Pan's ability to provide a long-lasting, nonstick cooking experience.

## B. BLUE DIAMOND PANS

17.    In this competitive landscape, Blue Diamond claims to be the "New Standard in Nonstick."

> Want a nonstick pan that can standup to daily life? Tough enough for any kitchen and better for your health. The secret is the diamond-infused design. Blue Diamond's nonstick coating is 5X harder, 4X faster and 10X longer lasting than traditional nonstick coatings.  It's even metal utensil safe. It's also toxin-free! Meaning free of PFAS, PFOA, lead & cadmium. Plus, it's safe to use in your oven and broiler up to 850°F.  Healthy cooking has never been easier.[2]



18.    Specifically, Defendant promises that its Blue Diamond Pan is not only nonstick, but "10x longer lasting than traditional non-stick [pans]."[3]

---

[2] https://www.amazon.com/Blue-Diamond-Pan-CC001602-001-Nonstick/dp/B07CZH2GY9/ref=sr_1_4?crid=2K07KPV2DGXD8&keywords=blue+diamond+enhanced+ceramic+nonstick+cookware&qid=1575985088&sprefix=blue+diamond+enhanced+ceramic+cookware%2Caps%2C265&sr=8-4

[3] https://www.bluediamondpan.com/?mid=9881384

19.    The Blue Diamond television infomercial is even bolder, contrasting a competitor's nonstick pan that lasted only 30 days with Blue Diamond's pan that not only would last at least 10 times longer, but because "nothing sticks to Blue Diamond's nonstick ceramic surface," consumers would "enjoy nonstick cooking forever."[4]

20.    Every Blue Diamond Pan is accompanied by a packaging label that reinforces this message.



---

[4] https://www.youtube.com/watch?v=UmvK7lm9CXI



21.     Despite the myriad of nonstick representations made by Defendant, the Pan simply does not perform its most basic and critical function—to provide users with a nonstick cooking experience.

22.     Ms. Lamb cooked an egg, no different than the egg depicted on the label, but found that it stuck to the Pan. She attempted to cook an egg on two other occasions, each time suffering the same result—food stuck to the Pan necessitating a messy and arduous cleanup. Frustrated by her experience, Ms. Lamb stopped using the Pan in its entirety.

## C.     CONSUMER COMPLAINTS

23.     Ms. Lamb's experience is not unique. Indeed, a review of the Blue Diamond Pan conducted by ABC news found results similar to those Ms. Lamb experienced.[5]

---

[5] https://www.abc15.com/news/smart-shopper/bull-or-no-bull-blue-diamond-non-stick-pan-is-supposed-to-be-the-newest-standard-in-cookware

Introducing the 10-inch Blue Diamond Enhanced Ceramic Non-Stick Pan, allegedly infused with millions of diamonds. The commercial says it is, "So non-stick, it's like cooking on air!"

\* \* \*

The commercial shows the Blue Diamond Pan and how it compares to a copper pan. So, we purchased a 10-inch Red Copper Pan for $19.99 from Fry's Food Stores to do the same comparison. In the video, you see a sunny-side up egg sticking to a copper pan, but sliding off the Blue Diamond Pan. When we tried it, the egg actually stuck the landing for both, and not in a good way! The eggs stuck to the center of both pans when we tried to dump them onto a plate, and once we scraped them out of each pan, the cleanup was actually messier for the Blue Diamond Pan, much more difficult than a swipe of a damp towel.

\* \* \*

So, where does the Blue Diamond Pan rank on our Bull or No Bull Meter? I'm going with... BULL!

24.     The internet is chock-full of consumers with similar experiences and complaints about the Blue Diamond Pan. A small sampling of such complaints is included below. As reported on www.amazon.com.

Lisa Zelinski, February 19, 2019

At first I was really happy with these pans. But they only lasted a couple uses before stuff started sticking to them. Now they are practically garbage, as no matter how much you grease the pan, everything sticks even more than a regular pan. The frying pans warped even though it says they won't.

MAGNY, February 3, 2019

Pans were nice looking, however not durable. Had for 1 week, surface chipped in several places within 1 week. Also, handles should be heat resistant, they're not.

Jonathan, March 5, 2019

I have had this set since Oct 2018 (less than a year). They are absolutely horrible I have already thrown 2 away due to the inside flaking off. Do not waste your money.

BSTARK, August 17, 2019

The worst set I have ever owned! Not even 2 weeks later we had scratches down to silver metal from a sponge cleaning!? Yeah! We own plastic rubbermaid spatulas so I was livid! Very disappointed! Since then I chose to try and see if it just happened to be a mishap and continued using... um No! Can not get it cleaned! Burns in middle and had the blackened burned area to prove it. Ended up throwing away. :/ I have a new flat top range also so heat distribution was not an issue.. just this pan set!

Caterina G., November 15, 2019

Please notice NO stars for cleaning ease and value. We purchased this item in August, Blue Diamond CC001951-001 Cookware-Set, 14pc based on the amazing ad. We are VERY unhappy with the pans. Many things stick and the nonstick quality seems to be quickly diminishing. I actually had to SOAK a sauce pan to get homemade BBQ sauce off it (especially the sides of the pan) after it had been simmering for a few hours...We have been more careful with these pans than any others we have had and these are not performing well or holding up at all. There is already 1 pan we are no longer using for certain recipes. I would like to know the recourse I have, as we are out of our return window. I can send pictures if needed.

Eugene F., August 5, 2019

Very bad cookware set. Nowhere near non stick product. Used for several months and very disappointed. Would like very must to receive a refund....Horrible!!!

Robyn A, November 26, 2019

This pan isn't non stick!!!! Horrible do not buy!!!!!

Amazon Customer, June 5, 2019

These pans are the worst I've ever had[;] the handles get hot[;] everything sticks even with oil

SANDRA C., May 25, 2019

Bought 2 sets of 6 each pots and pans, total waist [sic] of money, everything stick to the pans can't even cook an egg with lots of oil. Disaster, has to use my old pans.

Eggs stick, difficult to clean. After the first couple of weeks, everything began to stick. Went back to using my Revere Ware. VERY DISAPPOINTED.


Ashley, February 27, 2019

100% do not recommend if you're looking for lasting non-stick. Bought a pan this past Christmas which worked perfectly until recently. Now, everything sticks. Do not recommend this pan. Have provided photos showing how much the rice stuck to the pan.

Monique C., August 2, 2019

I thought it would be great but in less than 10 days it started stick.

Elizabeth G., January 29, 2019

This is not nonstick cookware. Tried browning chicken in larger skillet, blackened seasoning stuck to skillet. This morning tried an egg, which stuck to the smaller skillet so badly that I could not get a spatula under the egg to turn it, and the stuck-on egg could not be just wiped out. Instructions said not to use nonstick sprays. I was wanting nonstick cookware, so I am returning this 14-piece set.

Chad A., March 26, 2019

I have yet to cook something that doesn't stick. Pans are terrible. Doesn't matter...dry, oil, spray, butter....everything sticks and isn't even easy to clean. Waste of money.

25.     Similarly, as reported on Highya.com.

Pan sucks

By Matt P., Cambridge, IL, Nov 28, 2019

Works fine until you scratch the surface, metal utensil safe, don't think so. I have not had the pan one month, already junk, everything sticks to it, can't get the stuck-on food when cleaning it. As far as I am concerned, the biggest rip off and false advertisement I have seen or dealt with in many years. I am going to tell everybody about it and going to use my pan that I paid $30 for it as example of your false advertisement, thank you very much.

Bottom Line: No, I would not recommend this to a friend

Waste of money

By Ramon B., FL, Nov 18, 2019

I bought the complete set. I have only used the skillet to make omelets. I've used it perhaps 8-10 times. The pan doesn't have a single scratch on it shows minimal to no wear but everything now sticks. This is a complete waste of money, don't buy it.

Bottom Line: No, I would not recommend this to a friend


Blue Diamond no-stick pan
By Denny D., Madoc, Ontario, Canada, Nov 14, 2019

Do yourself a favor and save your money, this pan may be strong but the handle gets hot during cooking on the stove and the pan is not no-stick. I got mine as a gift last Christmas and it was good for a while and then it started to stick with everything. I have hand washed this pan since day one and I didn't understand why it's sticking. We can't even cook bacon without it making a terrible mess. I will never ask for another one again!

Bottom Line: No, I would not recommend this to a friend

Lousy pan, no support
By Gregory F., Los Angeles, CA, Oct 12, 2019

We bought this pan at Target figuring it would be better than a generic pan.
WRONG!

Everything has started sticking to it you can't clean it even with Comet and a scrubber.

I wrote to the company, they are full of crap. Their website says they have full discretion on whether or not to replace a damaged pan.

They wrote me back saying if I wanted a new pan I would have to send the old one back along with proof of purchase (like people keep all their receipts?) along with $8.95 for shipping of the new one...now...I didn't get a passing grade in advanced math but even if I did have the receipt it's going to cost at least $10.00 to ship this crap back to them and then 9 bucks for shipping? Ok, that's 19 bucks, which is what it cost to buy this piece of crap.

10

Bottom line: them and their crappy POS pan. I'm going to post as many bad reviews that I can including a YouTube video showing the junky burned out pan and their non-guarantee and BS correspondence.

Bottom Line: No, I would not recommend this to a friend
Sticking
By Michelle T., Oct 10, 2019

I don't heat the pan but recently it begins to gain. I have only had it for two months. I'm wondering if there is a way to get it to stop sticking. There are no scratches but it definitely won't cook an egg at this point. Very expensive for the quality. Also, I have never run either pan through a dishwasher.

Bottom Line: No, I would not recommend this to a friend

Worst pan I ever had
By David M., OK, Sep 25, 2019
Verified Reviewer

From the time I bought it everything stuck. I even tried using cooking spray and oil everything still stuck. I finally threw it in the trash. I wish that I could have given the pan less than one star.

Bottom Line: No, I would not recommend this to a friend

Disappointed
By Marlene W., SC, Sep 20, 2019

I bought 10pc, 12in and 4pc frypan set in February of this year and the fry pans are now sticking horribly. I am very disappointed in this product. It was my first time buying and will be my last. Not sure how to go about contacting customer service as all leads come to a dead end.

Dissatisfied customer.

Bottom Line: No, I would not recommend this to a friend

26.     Notwithstanding what was cooked, by whom or where, the simple common fact remains—that Blue Diamond's Enhanced Ceramic Non-Stick Pan sticks, and simply does not perform as represented.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff seeks relief on behalf of herself and as representatives of all others who are similarly situated. Pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2), (b)(3), and (c)(4), Plaintiff seeks certification of a Nationwide class defined as follows:

> All persons who purchased a Blue Diamond Enhanced Ceramic Non-Stick Pan anywhere in the United States during the applicable class period (the "Class").

28.     Plaintiff also seeks certification of a Florida state-wide sub-class defined as follows:

> All persons who purchased a Blue Diamond Enhanced Ceramic Non-Stick Pan in the state of Florida during the applicable class period (the "Florida Sub-Class").

29.     Excluded from the Classes are Cookware and any of its affiliates, parents, or subsidiaries; all persons who make a timely election to be excluded from the Classes; government entities; and the judges to whom this case is assigned, their immediate families, and court staff.

30.      Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

31.     The proposed Classes meet the criteria for certification under Rule 23(a), (b)(2), (b)(3), and (c)(4).

32.     **Numerosity. Fed. R. Civ. P. 23(a)(1).**   Consistent with Rule 23(a)(1), the members of the Classes are so numerous and geographically dispersed that the joinder of all members is impractical.  Defendant has sold thousands of Pans to consumers across the United States.

33.     **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).**   Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions

of law and fact that predominate over any questions affecting individual Class members. The common questions include:

a.       Whether Defendant's representations regarding the Product were false and misleading;

b.       Whether such statements were material to the reasonable consumer;

c.       Whether Blue Diamond Pans fail to perform as advertised and warranted;

d.       Whether Defendant intentionally concealed or failed to disclose to Plaintiff and the Class that Blue Diamond Pans do not perform as advertised and warranted;

e.       Whether Defendant breached its express and implied warranties by selling a defective product and failing to refund Plaintiff and Class Members all funds paid;

f.       Whether Plaintiff and Class Members are entitled to relief; and

g.       The appropriate measure of such relief.

34.     **Typicality. Fed. R. Civ. P. 23(a)(3).**  Consistent with Rule 23(a)(3), Plaintiff's claims are typical of those of other Class Members.  Plaintiff is a purchaser of a Blue Diamond Pan just as all other Class Members. Her damages and injuries are akin to other Class Members, and Plaintiff seeks relief consistent with the relief sought by the Class.

35.     **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Classes because Plaintiff is a member of the Classes she seeks to represent; is committed to pursuing this matter against Cookware to obtain relief for the Classes; and has no conflicts of interest with the Classes. Moreover, Plaintiff's Counsel are competent and experienced in class action litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

36.     **Superiority. Fed. R. Civ. P. 23(b)(3).**  Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to an individual plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Classes are relatively small compared to the burden and expense required to individually litigate their claims against Cookware, and thus, individual litigation to redress Cookware's wrongful conduct would be impracticable. Individual litigation by each Class Member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

37.     **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Classes as a whole, making injunctive and declaratory relief appropriate to the Classes as a whole.

38.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-**
**MOSS WARRANTY ACT, 15 U.S.C. §**
**2301 *et seq*.**

**(On Behalf of Plaintiff and All Class Members)**

39.     Plaintiff repeats and realleges Paragraphs 1-38 as if fully set forth herein.

40.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

41.     The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

42.     Plaintiff and other members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

43.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) and 2301(5).

44.     Defendant made the nonstick representations in writing. These representations were made in connection with the sale of the Product, related to the nature of the Product, and affirmed and promised that the Product is as represented and defect-free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

45.     The Products do not conform to the Defendant's written warranty with respect to the nonstick representations and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.  Consequently, Plaintiff and the other members of the Classes have suffered injury and are entitled to damages in an amount to be proven at trial.

15

## SECOND  CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY
### (On Behalf of Plaintiff and All Class Members)

46.     Plaintiff repeats and realleges Paragraphs 1-38 as if fully set forth herein.

47.     Defendant provided the Plaintiff and Class Members with an express warranty in the form of the nonstick representations which were written affirmations of fact.

48.     The nonstick representations were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

49.     These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and Class Members' purchasing decisions.

50.     Plaintiff and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

51.     Defendant breached the express warranty because the Products are not "nonstick."

52.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, and/or in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
### (On Behalf of Plaintiff and All Class Members)

53.     Plaintiff repeats and realleges Paragraphs 1-38 as if fully set forth herein.

54.     Defendant is in the business of manufacturing, distributing, marketing and advertising the Pans described above.

55.    Under the Uniform Commercial Code's implied warranty of merchantability, the Defendant warranted in writing and on the advertising and packaging that the pans were "Nonstick."

56.    Defendant breached the implied warranty of merchantability in that Defendant's Product's characteristics deviate from the label and Product's description, and reasonable consumers expecting a product that conforms to its label would not accept the Defendant's Products if they knew the Pans did not conform to the nonstick representations.

57.    The inability of the Defendant's Product to meet the representations on the label was wholly attributable to Defendant without Plaintiff's or Class Members' fault or neglect.

58.    As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendant's Products, and/or other amounts to be proven at trial.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT
### (Brought on Behalf of Plaintiff and All Class Members)

59.    Plaintiff repeats and realleges Paragraphs 1-38 as if fully set forth herein.

60.    As the intended and expected result of their conscious wrongdoing, Defendant has profited and benefited from the purchase of the Product by Plaintiff and the Class.

61.    Defendant has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Defendant's misconduct, Plaintiff and the Class did not receive Product of the quality, nature, fitness, or value that had been represented by Defendant, and that reasonable consumers expected.

62.    Defendant has been unjustly enriched by its fraudulent and deceptive withholding of benefits to Plaintiff and the Class at the expense of these parties.

63.     Equity and good conscience militate against permitting Defendant to retain these profits and benefits.

64.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and Class Members suffered injury and seek an order directing Defendant's disgorgement and the return to Plaintiff and the Classes of the amount each improperly paid to Defendant.

## FIFTH CAUSE OF ACTION

**VIOLATION OF FLORIDA'S
DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
(On Behalf of the Florida Sub-Class)**

65.     Plaintiff repeats and realleges Paragraphs 1-38 as if fully set forth herein.

66.     Plaintiff and the Class Members are "consumers."  Fla. Stat. § 501.203(7).

67.     Plaintiff and Class Members purchased "things of value" in the form of their goods and services acquired from Defendant. These purchases were made for personal, family, or household purposes. Fla. Stat. § 501.203(9).

68.     Defendant engaged in the conduct alleged in this Complaint by advertising and entering into transactions intended to result, and which did result, in the sale of goods or services, to consumers, including Plaintiff and the Class Members. Fla. Stat. § 501.203(8).

69.     Defendant engaged in, and its acts and omissions affected, trade and commerce. Defendant's acts, practices, and omissions were done in the course of Defendant's business of advertising, marketing, offering to sell, and selling and/or renting goods and services throughout Florida and the United States. Fla. Stat. § 501.203(8).

70.     Defendant, operating in Florida, engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of Fla. Stat. § 501.204(1), including but not limited to, representing that the Products were nonstick when they were not.

18

71.     This conduct is considered an unfair method of competition, and constitutes unfair and unconscionable acts and practices. Fla. Stat. § 501.204(1).

72.     As a direct and proximate result of Defendant's violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Plaintiff and the Class Members suffered actual damages by paying for Defendants' goods and services. Fla. Stat. § 501.211(2).

73.     As a direct result of Defendant's knowing violation of FDUTPA, Plaintiff and Class Members are also entitled to a declaratory judgment that Defendant's actions and practices alleged herein violate FDUTPA, and injunctive relief to stop Defendant from continuing to misrepresent the nature and quality of the Product. Fla. Stat. § 501.211(1).

74.     Plaintiff brings this action on behalf of herself and the Class Members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiff and the Class Members and the public from Defendant's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable, and unlawful practices. Defendant's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

75.     The above unfair and deceptive practices and acts by Defendant was immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and the Class Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

76.     Defendant's actions and inactions in engaging in the unfair practices and deceptive acts described herein were negligent, knowing and willful, and/or wanton and reckless.

77.     Plaintiff and the Class Members seek relief under Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*., including, but not limited to, damages, injunctive relief, and attorneys' fees and costs, and any other just and proper relief.

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests the following relief:

      a.      An Order certifying this case as a class action;

      b.      An Order appointing Plaintiff as the class representative;

      c.      An Order appointing undersigned counsel as class counsel;

      d.      A mandatory injunction directing the Defendant to cease misrepresenting the quality and nonstick nature of its Product;

      e.      An award of damages;

      f.      An award of costs and expenses;

      g.      An award of attorneys' fees; and

      h.      Such other and further relief as this court may deem just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff demands a jury trial as to all issues triable by a jury.

Dated: January 27, 2020

                     **GLANCY PRONGAY & MURRAY LLP**

                     By: */s/Brian P. Murray*
                     Brian P. Murray (BM-9954)
                     230 Park Avenue, Suite 530
                     New York, NY 10169
                     Telephone: (212) 682-5340
                     Fax: (212) 884-0988
                     bmurray@glancylaw.com

**MORGAN & MORGAN COMPLEX
LITGATION GROUP**
Jean S. Martin (*pro hac vice to be submitted*)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 559-4908
Fax: (813) 223-5402
jeanmartin@forthepeople.com

*Attorneys for Plaintiff*