UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————————————

ELENA LAMB on behalf of herself and all others
similarly situated,

Plaintiff,

v.                                                          Civil No. 1:20-CV-00704 (LLS)

THE COOKWARE COMPANY (USA), LLC,

Defendants.

———————————————————————

# MEMORANDUM IN SUPPORT OF THE COOKWARE COMPANY'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

**HODGSON RUSS LLP**
*Attorneys for The Cookware Company (USA), LLC*
Benjamin M. Zuffranieri, Jr.
Ryan K. Cummings
Ryan J. Lucinski (*pro hac vice application pending*)
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202-4040
Telephone: 716.856.4000

# **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ................................................. 1

FACTS ALLEGED BY PLAINTIFF ........................................ 2

THE COOKWARE COMPANY'S WARRANTY ....................... 5

LEGAL STANDARDS UNDER RULES 12(B)(1) AND 12(B)(6) ........... 5

ARGUMENT ....................................................................... 7

POINT I.      PLAINTIFF'S REQUEST FOR AN INJUNCTION
              MUST BE DISMISSED BECAUSE SHE LACKS
              STANDING TO SEEK SUCH RELIEF ............................ 7

POINT II.     PLAINTIFF'S MAGNUSON-MOSS WARRANTY CLAIM FAILS
              BECAUSE SHE HAS NOT ALLEGED A VIABLE STATE LAW
              BREACH OF WARRANTY CLAIM, NOR HAS SHE ALLEGED
              THAT COOKWARE BREACHED ITS LIMITED WARRANTY .......... 11

POINT III.    PLAINTIFF'S STATE LAW EXPRESS WARRANTY
              CLAIM FAILS BECAUSE SHE HAS NOT PLEADED
              PRIVITY, NOTICE, OR AN OPPORTUNITY TO CURE ............... 14

              A.   Lamb's Failure to Provide Notice of the Alleged Breach
                   is Fatal to Her Claims. ...................................... 14

              B.   Lamb Admittedly Failed to Provide Cookware An Opportunity to Cure. ... 15

              C.   Plaintiff Failed to Allege Privity With Cookware. ...................... 16

              D.   Plaintiff's Advertising Allegations Are Insufficiently Pleaded. ............... 17

POINT IV.     PLAINTIFF'S IMPLIED WARRANTY CLAIM FAILS
              BECAUSE SHE IS NOT IN PRIVITY WITH COOKWARE .......... 18

POINT V.      PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS
              DUPLICATIVE OF HER BREACH OF WARRANTY CLAIMS ........ 19

POINT VI.     LAMB FAILS TO PROPERLY ALLEGE A FDUTPA CLAIM .......... 21

CONCLUSION ..................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

<u>Federal Cases</u>

*Abraham v Volkswagen of Am., Inc.*,
  795 F.2d 238 (2d Cir. 1986)....................................................................................13

*AKRO Investicni Spolecnost, A.S. v A.B. Watley, Inc.*,
  2003 WL 1108135 (S.D.N.Y. Mar. 12, 2003) ..........................................................7

*Alce v Wise Foods, Inc.*,
  2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018) .........................................................20

*Amidax Trading Grp v S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011).....................................................................................5

*Barr v Gen. Motors Corp.*,
  80 F.R.D. 136 (S.D. Ohio 1978) .............................................................................12

*Bell Atlantic Corp. v Twombly*,
  550 U.S. 544 (2007)...........................................................................................6, 23

*Bernardino v Barnes & Noble Booksellers, Inc.*,
  2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017) ..........................................................9

*Braynina v TJX Companies, Inc.*,
  2016 WL 5374134 (S.D.N.Y. Sept. 26 2016)..........................................................25

*Brisson v Ford Motor Co.*,
  602 F. Supp. 2d 1227 (M.D. Fla. 2009) *aff'd in relevant part,
  vacated on other grounds*, 349 Fed.Appx. 433 (11th Cir. 2009)............................18

*Buonasera v The Honest Company, Inc.*,
  208 F. Supp. 3d 555 (S.D.N.Y. 2016)...............................................................7, 8, 9

*Burns v Winnebago Indus., Inc.*,
  2012 WL 171088 (M.D. Fla. Jan. 20, 2012),
  *aff'd* 492 Fed.Appx. 44 (11th Cir. 2012) .........................................................15, 16

*Cali v Chrysler Grp. LLC*,
  2011 WL 383952 (S.D.N.Y. Jan. 18, 2011) .......................................................11, 12

*Chiarelli v Nissan N. Am., Inc.*,
  2015 WL 5686507 (E.D.N.Y. Sept. 25, 2015) ..........................................................7

ii

*City of Los Angeles v Lyons*,
   461 U.S. 95 (1983).................................................................................8

*Colella v Atkins Nutritionals, Inc.*,
   348 F. Supp. 3d 120 (E.D.N.Y. 2018) ...........................................14, 15

*In re ConAgra Foods*,
   908 F. Supp. 2d 1090 (C.D. Cal. 2012) ...............................................17

*Cummings v FCA US LLC*,
   401 F. Supp. 3d 288 (N.D.N.Y. 2019)..................................................11

*Cunningham v Fleetwood Homes of Ga., Inc.*,
   253 F.3d 611 (11th Cir. 2001) ..............................................................15

*David v Am. Suzuki Motor Corp.*,
   629 F. Supp. 2d 1309 (S.D. Fla. 2009) ...........................................19, 20

*Deshawn E. by Charlotte E. v Safir*,
   156 F.3d 340 (2d Cir. 1998)...................................................................8

*Dodge v Cnty. of Orange*,
   103 Fed.Appx. 688 (2d Cir. 2004) .........................................................9

*Douse v Boston Scientific Corp.*,
   314 F. Supp. 3d 1251 (M.D. Fla. 2018) ...............................................16

*Dzielak v Whirlpool Corp.*,
   2019 WL 6607220 (D.N.J. Dec. 5, 2019)............................................24

*Fed. Ins. Co. v Lazzara Yachts of N. Am., Inc.*,
   2010 WL 1223126 (M.D. Fla. Mar. 25, 2010) .....................................15

*Feliciano v Gen. Motors LLC*,
   2016 WL 9344120 (S.D.N.Y. Mar. 31, 2016) ................................11, 18

*Foster v Chattem, Inc.*,
   2014 WL 3687129 (M.D. Fla. July 24, 2014) ......................................19

*Freidman v Gen. Motors Corp.*,
   2009 WL 454252 (S.D.N.Y. Feb. 23, 2009).........................................7

*Fullwood v Wolfgang's Steakhouse, Inc.*,
   2017 WL 377931 (S.D.N.Y. 2017)........................................................6

*Garcia v Chrysler Gr. LLC*,
   127 F. Supp. 3d 212 (S.D.N.Y. 2015)........................................................11

*In re Grand Theft Auto Video Game Consumer Litig.*,
   251 F.R.D. 139 (S.D.N.Y. 2008) ...............................................................12

*Groshare v Wilson's Ltd., Inc.*,
   2010 WL 2136434 (M.D. Fla. May 27, 2010).........................................23

*Hache v Damon Corp.*,
   2008 WL 912434 (M.D. Fla. 2008) ...........................................................24

*Hertz Corp. v Accenture LLP*,
   2019 WL 5537997 (S.D.N.Y. Oct. 25, 2019)....................................21, 22

*Hetrick v Ideal Image Dev Corp.*,
   372 Fed.Appx. 985 (11th Cir. 2010)..........................................................21

*Holve v McCormick & Co., Inc.*,
   334 F. Supp. 3d 535 (W.D.N.Y. 2018) ........................................................9

*Horton v Woodman Labs, Inc.*,
   2014 WL 1329355 (M.D. Fla. Apr. 2, 2014).............................................24

*Illinois Tool Works, Inc. v J-B Weld Co., LLC*,
   419 F. Supp. 3d 382 (D. Conn. 2019).........................................................7

*Irvine v Kate Spade and Co.*,
   2017 WL 4326538 (S.D.N.Y. Sept. 28, 2017)...........................................25

*Kiobel v Royal Dutch Petroleum Co.*,
   621 F.3d 111 (2d Cir. 2010)........................................................................6

*Kommer v Ford Motor Co.*,
   2017 WL 3251598 (N.D.N.Y. 2017) ...........................................................6

*Krush Communications, LLC v Network Enhanced Telecom, LLP*,
   2014 WL 12625758 (M.D. Fla. Apr. 29, 2014)..........................................24

*Makarova v United States*,
   201 F.3d 110 (2d Cir. 2000).........................................................................6

*Maor v Dollar Thrifty Automotive Group, Inc.*,
   303 F. Supp. 3d 1320 (S.D. Fla. 2017).......................................................21

*Marino v Coach, Inc.*,
264 F. Supp. 3d 558 (S.D.N.Y. 2017)...............................................................9, 11

*Mason v Lumber Liquidators, Inc.*,
2019 WL 2088609 (E.D.N.Y. May 13, 2019) ...............................................6

*In Re: Monat Hair Care Products Marketing, Sales Practices, and Products*
*Liability Lit.*, 2019 WL 5423457 (S.D. Fla. Oct. 23, 2019)......................................10

*Nicosia v Amazon*,
834 F.3d 220 (2d Cir. 2016)........................................................8, 9, 10

*PB Prop. Mgmt., Inc. v Goodman Mfg. Co., L.P.*,
2013 WL 12172912 (M.D. Fla. Aug. 23, 2013) .................................................22

*Schechner v Whirlpool Corporation*,
237 F. Supp. 3d 601 (E.D. Mich. 2017)...............................................12, 17, 18

*Schwiesow v Winston Furniture Co., Inc.*,
74 F Supp. 2d 544 (M.D.N.C. 1999) ....................................................12, 13

*Shipping Fin. Servs. Corp. v Drakos*,
140 F.3d 129 (2d Cir. 1998)............................................................6

*Simon v E. Kentucky Welfare Rights Org.*,
426 U.S. 26 (1976).......................................................................8

*Singleton v Fifth Generation, Inc.*,
2016 WL 406295 (N.D.N.Y Jan. 12, 2016)....................................................14

*Singleton v Fifth Generation, Inc.*,
2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017) ...............................................9

*Spokeo, Inc. v Robins*,
__ U.S. __, 136 S. Ct. 1540 (2016).......................................................6

*Szymczak v Nissan N. Am., Inc.*,
2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ...............................................20

*T.W.M. v Am. Med. Sys., Inc.*,
886 F Supp. 842 (N.D. Fla. 1995)........................................................17

*Tyman v Pfizer, Inc.*,
2017 WL 6988936 (S.D.N.Y. Dec. 27, 2017) ...............................................22

*Varnes v Home Depot USA, Inc.*,
  2012 WL 5611055 (M.D. Fla. Nov. 15, 2012) .................................................23, 24

*Watts v Volkswagen Artiengesellschaft*,
  488 F. Supp. 1233 (W.D. Ark. 1980).................................................................13

*White v First Am. Registry*,
  230 F.R.D. 365 (S.D.N.Y. 2005) .....................................................................11

*Wilbur v Toyota Motor Sales, U.S.A., Inc.*,
  86 F.3d 23 (2d Cir. 1996) ...............................................................................11

**State Cases**

*American Safety Ins. Serv., Inc. v Griggs*,
  959 So. 2d 322 (Fla. 5th DCA 2007) ...............................................................20

*Dunham-Bush, Inc. v Thermo-Air Serv, Inc.*,
  351 So. 2d 351 (Fla. 4th DCA 1977) ..........................................................14, 15

*Duty Free World, Inc. v Miami Perfume Junc., Inc.*,
  253 So. 3d 689 (Fla 3d DCA 2018) ..................................................................20

*Intergraph Corp. v Stearman*,
  555 So. 2d 1282 (Fla. 2d DCA 1990) ...............................................................16

*Kramer v. Piper Aircraft Corp.*,
  520 So. 2d 37 (Fla. 1988)................................................................................17

*Ocana v Ford Motor Co.*,
  992 So. 2d 319 (Fla. 3d DCA 2008) .................................................................18

*PNR, Inc. v Beacon Prop. Mgmt., Inc.*,
  842 So. 2d 773 (Fla. 2003)..............................................................................21

*Rollins, Inc. v Butland*,
  951 So. 2d 860 (Fla. 2d DCA 2006) .................................................................25

*West v. Caterpillar Tractor Co.*,
  336 So. 2d 80 (Fla. 1976)................................................................................17

**Federal Statutes**

15 U.S.C. §§ 2301 *et seq.*...............................................................11, 17, 18

15 U.S.C. § 2310..................................................................................12, 13, 15

**State Statutes**

FLA. STAT. ANN. § 501.201 *et seq.* .............................................................................................21

FLA. STAT. ANN. § 672.607(3)(a).............................................................................................14

N.Y. U.C.C. § 2-607(3)(a) ........................................................................................................14

## PRELIMINARY STATEMENT

Plaintiff Elena Lamb's Amended Complaint lays bare the incurable deficiencies in her pleading and should be dismissed in its entirety, with prejudice. Once again, she attempts to turn three "difficult and messy" cooking experiences with her Blue Diamond nonstick pan—a pan which she had admittedly disposed of—into a nationwide class action against its manufacturer, The Cookware Company (USA), LLC ("Cookware"). Her attempt, however, fails at the pleading stage, even after she amended as of right in response to Cookware's motion to dismiss her original complaint. As a threshold matter, she still does not have standing to seek an injunction prohibiting Cookware's future advertising and sales of these pans, as she alleges no personal, future harm. Lamb's breach of warranty, unjust enrichment, and Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") all still suffer from similar, fundamental flaws.

Lamb never availed herself of Cookware's Limited Lifetime Warranty, nor does she acknowledge that such a warranty was provided, even after Cookware emphasized its existence in its initial motion to dismiss; so, there can be no breach of that warranty. Further, both her express and implied warranty claims fail because she does not plead that she was in privity with Cookware (a defect that is not, and could not be, rectified with her Amended Complaint)—indeed, she concedes that she purchased the pan from a third-party vendor, Walmart. Her express warranty claims are also subject to dismissal because she did not provide notice of the alleged defect to Cookware or allow it an opportunity to cure that defect. Even if she could overcome those deficiencies—which she cannot—an analysis of the allegedly misleading advertising statements demonstrates that they are not warranties under the Magnuson-Moss Warranty Act ("MMWA"). Her MMWA claim falls with her state law warranty claims.

Recognizing the flaws in her primary claims, Lamb asserts two "catch all" claims for unjust enrichment and an alleged violation of FDUTPA. The amendments reflected in her Amended Complaint are primarily directed to salvaging these "catch all" claims. But nonetheless, those claims remain an improper re-packaging of her breach of warranty claims. Plaintiff's allegations make clear that no direct benefit was conferred upon Cookware, as she purchased the product through an intermediary, which destroys any unjust enrichment claim she may have had. And her FDUTPA claim remains flawed because she has not pleaded it with the specificity required by Rule 9(b), nor has she alleged actual damages.

## FACTS ALLEGED BY PLAINTIFF

When stripped of its generic recitation of what constitutes nonstick cookware, irrelevant information about Cookware's business model, and cherry-picked internet reviews,[1] Lamb's Amended Complaint alleges:

1.      Cookware is the manufacturer of several brands of cookware, including a line of Blue Diamond Enhanced Ceramic Non-Stick Pans ("Pans" or "Products").

2.      Blue Diamond is heavily advertised on TV and through social media. At its core, Blue Diamond claims to be a ceramic, diamond infused, nonstick pan with coating 5 times harder, 4 times faster, and 10 times longer lasting than traditional nonstick coatings.

3.      Despite Defendant's representations, however, the Pan fails to live up to its most basic and fundamental purpose – to provide users with a nonstick cooking experience.

---

[1]      Paragraphs 29 and 30 of the Amended Complaint quote from customer reviews of certain Blue Diamond products on Amazon.com and Highya.com to support Plaintiff's allegation that the internet is "chock-full" of negative reviews. To say that Plaintiff's selected reviews are cherry picked is kind. As of April 27, 2020, Amazon.com had 2,218 reviews for Blue Diamond's cookware. Its products' overall rating was a 4.2 out of 5 stars, with 69% of the reviews rating a full five stars. Indeed, a number of reviews specifically recite how well the nonstick pans work, *see e.g.*: on April 25, 2020 Catherine Cicoria gave it 5.0 out of 5 stars:

> Bought this grill along with 2 frying pans about two months ago. These are absolutely the best non stick pans I have ever had. Love them. Cook the meat and put right into the oven works great. Cleaning is a breeze. And they are so pretty to look at as well. I would highly recommend these pans.

4.     Defendant marketed the Pan directly to Plaintiff, and Plaintiff purchased the Pan through an intermediary retail outfit. Plaintiff reasonably expected the Pan would provide for a nonstick cooking experience. Instead, she was immediately confronted with food that stuck to the Pan, necessitating a messy and difficult clean up. The Pan failed to perform as promised, undermining the very purpose for which it was purchased.

5.     Plaintiff, on behalf of all others similarly situated, alleges claims for breach of the Magnuson-Moss Warranty Act, express warranty, implied warranty of merchantability, Florida's Deceptive and Unfair Trade Practices Act, and unjust enrichment. She also seeks damages, and injunctive and declaratory relief.

* * *

6.     Plaintiff Elena Lamb is a resident of High Springs, Florida. She purchased a Blue Diamond nonstick pan from a Walmart store in Florida in 2019 for approximately $19.88.

7.     Ms. Lamb read and relied on the representations made on the Product label in advance of her purchase. These representations were material in her purchasing decision. In particular, Ms. Lamb relied on the fact that the Product was advertised and sold as a "nonstick" pan.

8.     Ms. Lamb used the Pan a total of 3 times, primarily to make eggs. Although she used the Pan according to the instructions, each time food stuck to the pan, forcing a difficult and messy clean up. Ms. Lamb subsequently stopped using the Pan and has since discarded it.[2]

9.     Defendant The Cookware Company (USA), LLC is a Delaware limited liability company headquartered at 94 N Broadway, Irvington, NY 10533. Defendant is a global company specializing in the production and distribution of cookware. It owns 12 different product lines including Blue Diamond. Defendant directly markets its Products to consumers through TV, social media, and other marketing channels.

* * *

22.     In this competitive landscape, Blue Diamond claims to be the "New Standard in Nonstick."

---

[2]     Plaintiff Lamb's admission that she has discarded the Pan raises significant spoliation concerns as Cookware cannot evaluate whether it was defective, whether she misused the pan, and/or whether it was modified after leaving Cookware's control. Such destruction also renders her unable to comply with Cookware's written warranty, which reserves to Cookware the right of "examination of the [allegedly defective product]. . . ."

3

23.    Want a nonstick pan that can standup to daily life? Tough enough for any kitchen and better for your health. The secret is the diamond-infused design. Blue Diamond's nonstick coating is 5X harder, 4X faster and 10X longer lasting than traditional nonstick coatings. It's even metal utensil safe. It's also toxin-free! Meaning free of PFAS, PFOA, lead & cadmium. Plus, it's safe to use in your oven and broiler up to 850°F. Healthy cooking has never been easier.

24.    Specifically, Defendant promises that its Blue Diamond Pan is not only nonstick, but "10x longer lasting than traditional non-stick [pans]."

25.    The Blue Diamond television infomercial is even bolder, contrasting a competitor's nonstick pan that lasted only 30 days with Blue Diamond's pan that not only would last at least 10 times longer, but because "nothing sticks to Blue Diamond's nonstick ceramic surface," consumers would "enjoy nonstick cooking forever."

26.    Every Blue Diamond Pan is accompanied by a packaging label that reinforces this message.

27.    Despite the myriad of nonstick representations made by Defendant, the Pan simply does not perform its most basic and critical function—to provide users with a nonstick cooking experience.

28.    Ms. Lamb cooked an egg, no different than the egg depicted on the label, but found that it stuck to the Pan. She attempted to cook an egg on two other occasions, each time suffering the same result—food stuck to the Pan necessitating a messy and arduous cleanup. Frustrated by her experience, Ms. Lamb stopped using the Pan in its entirety.

29.    Although the Pan did not perform as represented, Ms. Lamb is an active consumer and has since browsed nonstick pans. Due to Defendant's business model described above, however, Ms. Lamb may unknowingly purchase another of Defendant's Pans under a different brand name, or even under a brand that Defendant purchases in the future based on its aggressive, vertically-integrated acquisition model.

Based on these allegations, Lamb asserts claims for breach of the Magnuson-Moss Warranty Act, express warranty, implied warranty of merchantability, FDUTPA, and unjust enrichment. She also seeks damages, and injunctive and declaratory relief.

4

**THE COOKWARE COMPANY'S WARRANTY**

Cookware provides an express, Limited Lifetime Warranty for its products on the packaging itself, in the Care and Use manual provided with the product, and on its website (https://www.bluediamondpan.com). *See* Declaration of Donald Hildebrand, dated April 29, 2020, Exs. A, B, and C. The warranty on the packaging and in the Care and Use manual states:

> Your BlueDiamond™ warranty is only applicable on defects in material or workmanship of the product and its nonstick coating under normal, nonprofessional use in accordance with the Care and Use manual of BlueDiamond™. If your product is found to be defective during the guarantee period, the original owner may return it to the relevant store. Please also be sure to include a return address, description of the product defect, phone number and any other information pertinent to the product's return. The warranty on the nonstick coating is limited to 2 years on manufacturing defects. Upon examination of the product by BlueDiamond™, if it is found to be defective, BlueDiamond™ will repair any defective workmanship free of charge, whilst reserving the right to decide to replace the entire product, or if no longer available, a similar product. Damage caused by misuse, accidents, abuse, overheating, commercial use and/or alteration of the product by end customer, is explicitly excluded from the warranty. This warranty does not cover stains, discoloration o scratches due to normal wear and tear. In no event shall this warranty give rise to any compensation for consequential loss. This guarantee will only be considered upon presentation of dated proof of purchase, this guarantee card, and the product purchased. Please retain this guarantee card along with your proof of purchase. This guarantee does not affect Consumer Statutory Rights within the EU. This guarantee gives you specific legal rights, and you may have other rights which vary from state to state.

**LEGAL STANDARDS UNDER RULES 12(B)(1) AND 12(B)(6)**

Cookware moves to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Each carries its own legal standard.

First, to survive a motion seeking dismissal under Rule 12(b)(1), a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp v S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). Standing requires allegations of fact showing that the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."
*Spokeo, Inc. v Robins*, __ U.S. __ , 136 S. Ct. 1540, 1547 (2016). "Where, as here, a case is at
the pleading stage, the plaintiff must clearly allege facts demonstrating each element of
standing." *Fullwood v Wolfgang's Steakhouse, Inc*., 2017 WL 377931, *6 (S.D.N.Y. 2017)
(citation omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by
a preponderance of the evidence that it exists." *Makarova v United States*, 201 F.3d 110, 113 (2d
Cir. 2000). "[J]urisdiction must be shown affirmatively, and that showing is not made by
drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs.
Corp. v Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citations omitted).

Second, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain
sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."
*Kiobel v Royal Dutch Petroleum Co*., 621 F.3d 111, 191 (2d Cir. 2010) (citations omitted). A
claim has facial plausibility only when the "plaintiff's factual pleadings 'allow[] the court to
draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* This
requires more than "labels and conclusions, and a formulaic recitation of the elements of a cause
of action will not do." *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 555 (2007) (citations
omitted). "Where a court is unable to infer more than the mere possibility of the alleged
misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to
relief and the action is subject to dismissal." *Kommer v Ford Motor Co.*, 2017 WL 3251598, *2
(N.D.N.Y. 2017). Further, internet reviews have been found inherently unreliable and to lack any
probative value by numerous courts, rendering them facially irrelevant under an *Iqbal/Twombly*
analysis. *See Mason v Lumber Liquidators, Inc.*, 2019 WL 2088609, at *8 n.12 (E.D.N.Y. May

13, 2019) (unreliable); *Illinois Tool Works, Inc. v J-B Weld Co., LLC*, 419 F. Supp. 3d 382, 398 (D. Conn. 2019) (lacked probative value)

Lastly, the court can consider documents that are integral to the complaint, like a product's limited warranty, on a 12(b)(6) motion. *See Chiarelli v Nissan N. Am., Inc.*, 2015 WL 5686507, * 5 (E.D.N.Y. Sept. 25, 2015) (considering Nissan's New Vehicle Limited Warranty and Powertrain Coverage warranty on motion to dismiss); *Freidman v Gen. Motors Corp.,* 2009 WL 454252, at *2–3 (S.D.N.Y. Feb. 23, 2009) (considering contractual warranties in deciding motion to dismiss "is particularly [appropriate] when the plaintiff either had the document in its possession or knew of the document when bringing suit"); *AKRO Investicni Spolecnost, A.S. v A.B. Watley, Inc.,* 2003 WL 1108135, at *8 (S.D.N.Y. Mar. 12, 2003) (accord). Here, the Court can, and should, take into consideration Cookware's warranty.

## **ARGUMENT**

### **POINT I.**
### **PLAINTIFF'S REQUEST FOR AN INJUNCTION MUST BE DISMISSED BECAUSE SHE LACKS STANDING TO SEEK SUCH RELIEF**

Lamb's request for injunctive relief should be dismissed under Rule 12(b)(1) because the facts in the Amended Complaint are inadequate to support this Court's exercise of subject matter jurisdiction over such a claim. Time and again, this Court has dismissed consumer class action claims seeking an injunction against a manufacturer where the named plaintiff has not alleged the potential for future harm that would be remedied by an injunction.

For example, in *Buonasera v The Honest Company, Inc.*, 208 F. Supp. 3d 555 (S.D.N.Y. 2016), the named plaintiff brought an action against the defendant alleging that its advertising was misleading because it claimed that its hair care products were natural and contained no harsh

chemicals. *Id.* at 559. The plaintiff sought an injunction preventing the defendant from continuing to advertise its products in that manner. Honest moved to dismiss the request for injunctive relief because the named plaintiff did "not allege that he w[ould] purchase Honest's products in the future and therefore does not have any risk of ongoing harm." *Id.* at 563-64.

The *Buonasera* court began its analysis by noting that a "party must meet the minimum requirements imposed by Article III of the Constitution by alleging an actual case or controversy." *Id.* at 564 (citing *City of Los Angeles v Lyons*, 461 U.S. 95, 101 (1983)). Specifically, the court said "'a plaintiff must demonstrate that (1) he or she has suffered an injury; (2) the injury is traceable to the defendants' conduct; and (3) a federal court decision is likely to redress the injury.'" *Id.* (quoting *Deshawn E. by Charlotte E. v Safir*, 156 F.3d 340, 344 (2d Cir. 1998)). The analysis is done "for each claim and form of relief sought." *Id.* (citing *Spiro v Healthport Technologies, LLC*, 73 F. Supp. 3d 259, 270 (S.D.N.Y. 2014)). "A plaintiff cannot rely on a past injury alone because '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects.'" *Id.* (quoting *Lyons*, 461 U.S. at 102 (other citations omitted). "Rather, the plaintiff must 'demonstrate that she is likely to be harmed again in the future in a similar way.'" *Id.* (quoting *Nicosia v Amazon*, 834 F.3d 220, 239 (2d Cir. 2016)).

This analysis does not change in the context of a class action. *Id.* (citing *Simon v E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)) ("That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they

purport to represent.")) (internal quotation marks omitted). Accordingly, the *Buonasera* court held that the named plaintiff "must have standing in order to seek injunctive relief on behalf of the class." *Id.* (citing *Dodge v Cnty. of Orange*, 103 Fed.Appx. 688, 690 (2d Cir. 2004)).

Applying these principles, the *Buonasera* court dismissed the named plaintiff's request for injunctive relief, finding that "Buonasera ha[d] not alleged that he w[ould] purchase Honest's products in the future." *Id.* And as such, the named plaintiff "ha[d] not demonstrated a likelihood of future injury," so "he d[id] not have standing to seek injunctive relief." *Id.* (citing *Nicosia*, 834 F.3d at 239) (other citations omitted). Finally, because the named plaintiff did "not individually have standing to seek injunctive relief, he d[id] not have standing to seek injunctive relief on behalf of a putative New York class." *Id.*; *see also Singleton v Fifth Generation, Inc.*, 2017 WL 5001444, at *16 (N.D.N.Y. Sept. 27, 2017) ("Without standing, Plaintiff may not represent the proposed class for purposes of seeking injunctive relief.").

The same analysis has been applied, and result reached, in numerous proposed consumer class action cases. *See e.g. Holve v McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 552-53 (W.D.N.Y. 2018) (dismissing the request for injunctive relief because the named plaintiff lacked standing to pursue such a claim based on her allegation that she "will purchase the Products in the future only if Defendant alters its branding."); *Bernardino v Barnes & Noble Booksellers, Inc.*, 2017 WL 3727230, at *6 (S.D.N.Y. Aug. 11, 2017) ("[Plaintiff] stated in her sworn Declaration that she will not make further DVD purchases from [Defendant] until it changes its website. This admission deprives [Plaintiff] of standing because she has stated she intends to avoid future harm and concedes that her own conduct can prevent future harm.") (internal citation omitted); *Marino v Coach, Inc.*, 264 F. Supp. 3d 558, 565-66 (S.D.N.Y. 2017)

9

("Plaintiffs have not alleged that they intend to purchase products from Coach Factory stores in the future. Even if they had, now that they know that the MFSRPs are not former prices, they cannot be misled. Rather, Plaintiffs' claim for injunctive relief is based entirely on their past injuries and the potential that other consumers might be deceived in the future. . . . Because these Plaintiffs, like *Nicosia*, are pursuing injunctive relief based solely on past purchases, like *Nicosia*, they lack Article III standing.").

Finally, Florida courts have reached the same lack-of-standing conclusion regardless of whether the purported basis for an injunction is the common law or FDUTPA. *See In Re: Monat Hair Care Products Marketing, Sales Practices, and Products Liability Lit.*, 2019 WL 5423457, at *5 (S.D. Fla. Oct. 23, 2019) ("Because Plaintiffs fail to allege the threat of future harm, they have no constitutional standing to seek injunctive relief under FDUTPA or the alternate state consumer protection claims.") (citations omitted).

Here, Lamb made no allegations of future harm in her original complaint. *See generally* Complaint. In her Amended Complaint, Lamb does not allege that she will be harmed in the future by purchasing any Blue Diamond product, but rather claims that she may accidentally purchase some other Cookware product, from some other Cookware line that is not the subject of this lawsuit. Amended Complaint, ¶ 29. Indeed, Lamb's speculation extends to product lines that Cookware has not even acquired to date, but may in the future. *Id.* The Amended Complaint is devoid of any allegation that Cookware's other products contain the same alleged "defect" as the Blue Diamond line. Nor is there any allegation that the yet-unknown future product line Cookware may acquire has a "defect." Such speculative future harm is not sufficiently actual or imminent to confer standing on a putative consumer class action plaintiff to seek an injunction.

10

*See White v First Am. Registry*, 230 F.R.D. 365, 368 (S.D.N.Y. 2005) ("the risk of any future

injury as a result of FAR's policy is speculative and falls well short of the realistic threat

required to obtain equitable relief."). And, as the *Marino* Court held, now that Lamb is aware of

the 12 product lines owned by Cookware, she cannot be "misled." *Marino*, 264 F. Supp. 3d at

565-66; Amended Complaint, ¶ 9.

Plaintiff's request for injunctive relief, on behalf of herself and the unidentified class

members, should be dismissed as a matter of law.

## POINT II.
## PLAINTIFF'S MAGNUSON-MOSS WARRANTY CLAIM FAILS BECAUSE SHE HAS NOT ALLEGED A VIABLE STATE LAW BREACH OF WARRANTY CLAIM, NOR HAS SHE ALLEGED THAT COOKWARE BREACHED ITS LIMITED WARRANTY

The MMWA, 15 U.S.C. §§ 2301 *et seq.*, "grants relief to a consumer 'who is damaged by

the failure of a … warrantor … to comply with any obligation … under a written warranty.'"

*Feliciano v Gen. Motors LLC*, 2016 WL 9344120, at *8 (S.D.N.Y. Mar. 31, 2016) (quoting

*Wilbur v Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996)). "To state a claim

under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or

implied warranty under state law." *Cummings v FCA US LLC*, 401 F. Supp. 3d 288, 315-16

(N.D.N.Y. 2019) (quoting *Garcia v Chrysler Gr. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y.

2015). As such, "claims under the [MMWA] stand or fall with the express and implied warranty

claims under state law." *Cali v Chrysler Grp. LLC*, 2011 WL 383952, at *4 (S.D.N.Y. Jan. 18,

2011). As discussed *infra* Points III and IV, Lamb's state law claims for breach of express or

implied warranty are fatally defective and, therefore, her First Cause of Action under the

11

MMWA must also be dismissed. *See Cali*, 2011 WL 383952, at *4 (dismissing MMWA claim where the state law claims for breach of warranty had been dismissed).

The state's law where the purchase occurred governs a plaintiff's express or implied warranty claims. *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 146 (S.D.N.Y. 2008) ("In analyzing putative, nationwide, consumer-protection class actions, several courts have determined that the law of the state where each plaintiff resides and purchased the relevant product should apply" and, therefore, the Court applied the law of the state of purchase to the plaintiff's breach of warranty and unjust enrichment claims) (collecting cases); *Schechner v Whirlpool Corporation*, 237 F. Supp. 3d 601, 609 (E.D. Mich. 2017) (same). Here, Lamb, is a citizen of Florida and purchased the Pan in Florida. Amended Complaint, ¶ 6.

Notwithstanding the state law deficiencies, Lamb's MMWA claim is also barred by the very language of § 2310(d)(3), which provides that three requirements must be met for a court to have subject matter jurisdiction of a MMWA class action: (1) no individual claim can be $25 or less, (2) there must be at least 100 named plaintiffs, and (3) the amount in controversy must exceed $50,000 in the aggregate. *Barr v Gen. Motors Corp.*, 80 F.R.D. 136, 140 (S.D. Ohio 1978) ("The provisions of s 2310(d)(3) are written in the disjunctive, and therefore all three subsections must be satisfied."). "The purpose of these jurisdictional provisions is to avoid trivial or insignificant actions being brought as class actions in the federal courts." *Schwiesow v Winston Furniture Co., Inc.*, 74 F Supp. 2d 544, 546 (M.D.N.C. 1999) (quoting H.R.Rep. No. 93–1107, *reprinted in* 1974 U.S.C.C.A.N. 7702, 7724)) (internal quotations omitted). "Section 2310(d) 'is designed to restrict access to federal courts.'" *Id.* (citations omitted).

Section 2310(d)(3)(A) bars such claims "if the amount in controversy of any individual claim is less than the sum or value of $25." Here Lamb has alleged on two different occasions that she bought the subject pan for $19.88. Amended Complaint, ¶ 6. Cookware's warranty expressly states: "OUR LIABILITY WILL UNDER NO CIRCUMSTANCES EXCEED THE ACTUAL AMOUNT PAID BY YOU FOR THE DEFECTIVE PRODUCT." Hildebrand Dec., Ex. C. So, at the very least, Lamb's individual claim will not exceed $25 and, therefore, the MMWA claim must be dismissed for lack of subject matter jurisdiction.[3]

Finally, no claim can be maintained as a class action where "the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3)(C); *Watts v Volkswagen Artiengesellschaft*, 488 F. Supp. 1233, 1236 (W.D. Ark. 1980) ("We find that this Court lacks subject matter jurisdiction over class actions under 15 U.S.C. § 2310(d)(3) unless at the time federal jurisdiction was invoked, there were 100 named plaintiffs. Since there are only two (2) named plaintiffs who purport to bring a class action, we do not have subject matter jurisdiction under the Magnuson-Moss Act."); *Abraham v Volkswagen of Am., Inc.*, 795 F.2d 238, 245 (2d Cir. 1986) ("[I]f, in the course of the litigation, some named plaintiffs are dismissed before trial and the number falls below 100, enough plaintiffs with *prima facie* claims must be added to reach 100, or the class must be decertified."); *Schwiesow*, 74 F Supp. 2d at 546 (dismissing MMW claim because there were not 100 named plaintiffs in complaint). Lamb is the only named plaintiff in this case. As such, Lamb's MMWA claim must be dismissed.

---

[3]      Of course, to meet the $50,000 aggregate amount at issue, Plaintiff would also have to allege a class in excess of 2,500 members at $20 per member to meet that threshold under §2310(d)(2), which she has not done.

## POINT III.
## PLAINTIFF'S STATE LAW EXPRESS WARRANTY CLAIM FAILS BECAUSE SHE HAS NOT PLEADED PRIVITY, NOTICE, OR AN OPPORTUNITY TO CURE

Once again, Lamb does not acknowledge, much less allege a breach of, Cookware's written warranty.[4] Rather, she relies upon alleged representations in the Products' advertising in an effort to substantiate her express warranty claim. Lamb's breach of express warranty claim still fails for at least four, independent, reasons. First, she fails to allege that she provided notice of the alleged breach to anyone. Second, she fails to allege that she provided Cookware with an opportunity to cure the alleged breach. Third, she concedes that she was not in privity with Cookware. And fourth, the alleged advertising statements do not constitute express warranties under the MMWA. For any one of these reasons, her express warranty claim fails.

### A.      Lamb's Failure to Provide Notice of the Alleged Breach is Fatal to Her Claims.

Under Florida law, in order for a consumer to allege a breach of warranty claim, they must allege that they provided notice of the breach to the seller. *See Colella v Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) ("To successfully state a claim for breach of warranty, 'a buyer must provide the seller with timely notice of an alleged breach of warranty.'" (quoting *Singleton v Fifth Generation, Inc.*, 2016 WL 406295, at *12 (N.D.N.Y Jan. 12, 2016) (citing N.Y. U.C.C. § 2-607(3)(a); FLA. STAT. ANN. § 672.607(3)(a) ("[t]he buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach *or be barred from any remedy*.")) (emphasis added); *Dunham-Bush, Inc. v Thermo-Air Serv, Inc.,* 351 So. 2d 351, 353 (Fla. 4th DCA 1977) (breach of warranty claim

---

[4]      Attached as Exhibit A is a comparison of the packaging photograph included in the Amended Complaint and the complete packaging identified in the Hildebrand declaration as Exhibit A. Plaintiff's pictures omit the packaging flap with the warranty information again, despite Cookware identifying this glaring omission in its original motion to dismiss. One is left to wonder why Plaintiff repeated her omission.

requires "notice to seller of breach"). The failure to allege such notice necessitates dismissal of the breach of warranty claim. *Dunham-Bush, Inc.,* 351 So. 2d at 353 (dismissing Plaintiff's warranty claim for lack of notice); *Colella*, 348 F. Supp. 3d at 144 (same). Here, Lamb claims that she purchased the Pan from Walmart, but she does not allege that she provided notice of the alleged warranty claim to Walmart, Cookware, or anyone else for that matter. *See generally* Amended Complaint. Her express warranty claim should be dismissed.

**B.     Lamb Admittedly Failed to Provide Cookware An Opportunity to Cure.**

In addition to the notice requirement, in order for a party to assert a breach of express warranty claim under the MMWA, they must allege that they provided the defendant with a reasonable opportunity to cure the alleged breach. *See Fed. Ins. Co. v Lazzara Yachts of N. Am., Inc.*, 2010 WL 1223126, at *5 (M.D. Fla. Mar. 25, 2010) ("Prior to the filing of an action for breach of warranty under Magnuson Moss, a defendant must be given a reasonable opportunity to cure any failure to comply with its warranty obligations. Federal concedes that the second amended complaint fails to allege that Lazzara Yacht Corporation was provided a reasonable opportunity to cure. Federal has therefore failed to state a cause of action against Lazzara Yacht Corporation in Count II for breach of warranty pursuant to Magnuson Moss.") (citing *Cunningham v Fleetwood Homes of Ga., Inc.,* 253 F.3d 611, 617-18 (11th Cir. 2001)); 15 U.S.C. § 2310(e)); *see also Burns v Winnebago Indus., Inc.*, 2012 WL 171088, at *4 (M.D. Fla. Jan. 20, 2012), *aff'd* 492 Fed.Appx. 44 (11th Cir. 2012) (dismissing the plaintiffs' state law breach of warranty claims and his MMWA breach of warranty claims because he did not comply with the limited warranty, which required notice to the manufacturer and an opportunity to cure, nor did he comply with the MMWA requirement of notice and an opportunity to cure).

Again, Lamb does not allege that she provided Cookware with an opportunity to cure the alleged breach. Indeed, Cookware's warranty is intended to facilitate such a resolution as it expressly conditions Cookware's obligations on return of the Pan: "This guarantee will only be considered upon presentation of dated proof of purchase, this guarantee card, and the product purchased." Hildebrand Dec., Exs. A, B. Rather than follow the simple warranty claim process with Cookware, Lamb disposed of the Pan and filed a nationwide class-action lawsuit. Amended Complaint, ¶ 8. As the *Burns* court held, Lamb's failure to comply with Cookware's warranty notice and cure provisions is fatal to both her state law express warranty and MMWA claim.

## C.    Plaintiff Failed to Allege Privity With Cookware.

Most courts hold that under Florida law, a party asserting an express breach of warranty claim must allege privity of contract with the defendant. *See Intergraph Corp. v Stearman*, 555 So. 2d 1282, 1283 (Fla. 2d DCA 1990) ("Privity is required in order to recover damages from the seller of a product for breach of express or implied warranties." (citations omitted); *Douse v Boston Scientific Corp.*, 314 F. Supp. 3d 1251, 1261 (M.D. Fla. 2018) (dismissing plaintiff's breach of warranty claims because her complaint lacked sufficient allegations of direct contact between the defendant manufacturer and her to satisfy Florida's privity requirements).

The *Douse* court discussed at some length the limited number of Florida courts that have found an exception to the privity requirement when the alleged breach is based on a product's packaging and not extensive, direct contact between the manufacturer and purchaser-plaintiff. *Douse*, 314 F Supp. 3d at 1261-62. The *Douse* court, relying on Florida Supreme Court precedent, ultimately rejected those packaging cases because "extending warranty liability to include product label representations would swallow the privity rule entirely." *Id.* at 1262; *see*

*also T.W.M. v Am. Med. Sys., Inc.*, 886 F Supp. 842, 844 (N.D. Fla. 1995) ("The law of Florida is

that to recover for the breach of a warranty, either express or implied, the plaintiff must be in

privity of contract with the defendant.... Plaintiffs' warranty claims . . . are all brought under

Florida's version of Article 2 (Sales) of the Uniform Commercial Code. Ch. 672, *Fla.Stat.*

(1993). A plaintiff who purchases a product, but does not buy it directly from the defendant, is

not in privity with that defendant.") (citing *Kramer v. Piper Aircraft Corp.,* 520 So. 2d 37 (Fla.

1988); *West v. Caterpillar Tractor Co.,* 336 So. 2d 80 (Fla. 1976); 1 White & Summers, *Uniform

Commercial Code* § 11–2, at 528 (3rd ed. 1988)).

Lamb does not allege any direct contact with Cookware and, as such, her Second Cause

of Action is subject to dismissal for lack of privity as well.

**D.     Plaintiff's Advertising Allegations Are Insufficiently Pleaded.**

Finally, notwithstanding the foregoing pleading deficiencies, an analysis of the alleged

"affirmations-of-fact" upon which Lamb bases her express warranty claim establishes that they

are not actionable under the MMWA. "Not every affirmation of fact made by a manufacturer

creates a warranty." *Schechner*, 237 F. Supp. 3d at 615. A plaintiff must allege two things: "(1)

the statement must 'relate[] to the nature of the material or workmanship' and (2) the statement

must 'affirm[] or promise[] that such material or workmanship is defect free; or will meet a

specified level of performance over a specified period of time.'" *Id.* (quoting 15 U.S.C. §

2301(6)). "The MMWA defines written warranty narrowly and '[c]ourts have declined to extend

the term … beyond its statutory definition.'" *Id.* (quoting *In re ConAgra Foods*, 908 F. Supp. 2d

1090, 1101 (C.D. Cal. 2012)). "The unambiguous statutory definition of a written affirmation-of-

fact warranty requires the warrantor to make an *affirmation or promise of* defect-free performance." *Id.* (emphasis in original) (citing 15 U.S.C. § 2301(6)).

The advertising statements alleged in the Amended Complaint do not promise defect-free performance, but are better described as a description of anticipated product performance. Amended Complaint, ¶¶ 22-29. Such representations are not actionable express warranty claims under the MMWA. *See Schechner*, 237 F. Supp. 3d at 615-16 ("Whirlpool's advertisement—that the oven would self-clean in under an hour—makes no affirmative promise of defect-free performance. Rather, the advertisement is more fairly characterized as a description of anticipated product performance."). Indeed, if the advertising statements promised defect-free performance, there would be no need for Cookware to offer its limited warranty. For this fourth, independent, reason Lamb's express warranty claim should be dismissed.

## POINT IV.
### PLAINTIFF'S IMPLIED WARRANTY CLAIM FAILS BECAUSE SHE IS NOT IN PRIVITY WITH COOKWARE

Lamb's breach of implied warranty claim fails because Florida law requires privity between a manufacturer and a consumer in order to assert a viable implied warranty claim. Plaintiff purchased the Pan from Walmart, negating any privity between herself and Cookware. As such, Lamb's Third Cause of Action must be dismissed.

"Under New York and Florida law, privity is required to bring a claim for breach of implied warranty." *Feliciano v Gen. Motors LLC*, 2016 WL 9344120, at *6 (S.D.N.Y. Mar. 31, 2016) (citations omitted); *Ocana v Ford Motor Co.*, 992 So. 2d 319, 325 (Fla. 3d DCA 2008) ("Under Florida law, privity of contract is required to maintain an action for breach of an implied warranty."); *Brisson v Ford Motor Co.*, 602 F. Supp. 2d 1227, 1232 n.5 (M.D. Fla. 2009) ("[T]he

general rule is that when a vehicle is purchased directly from a dealer, as opposed to the manufacturer, no privity exists between the [consumer and the manufacturer].") *aff'd in relevant part, vacated on other grounds*, 349 Fed.Appx. 433 (11th Cir. 2009); *David v Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1323 (S.D. Fla. 2009) (discussing at length Florida's history of requiring privity between a purchaser and manufacturer to have a viable implied warranty claim and dismissing the plaintiff-purchaser's implied warranty claim because he purchased the subject motorcycle from a dealer, not the manufacturer Suzuki); *Foster v Chattem, Inc.*, 2014 WL 3687129, at *3 (M.D. Fla. July 24, 2014) ("Because Plaintiff merely alleges that she saw the packaging in the store and then purchased the product and does not allege that any personal contact occurred between herself and a representative of Defendant, she has failed to demonstrate privity.").

Here, Lamb concedes that she was not in privity with Cookware, and purchased the Pan from a third party: "Plaintiff Elena Lamb is a resident of High Springs, Florida. She purchased a Blue Diamond nonstick pan from a Walmart store in Florida in 2019 for approximately $19.88." Amended Complaint, ¶ 6. Like the plaintiff's allegation in *David* that he purchased the motorcycle from a third-party dealership, and not the manufacturer directly, Lamb's admission is fatal to her implied warranty claim.

## POINT V.
## PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS
## DUPLICATIVE OF HER BREACH OF WARRANTY CLAIMS

Lamb asserts a claim for unjust enrichment that simply incorporates and repeats the same allegations comprising her other claims. *See* Amended Complaint, ¶¶ 65-70. To establish unjust enrichment, the plaintiff must demonstrate: "(1) plaintiff has conferred a benefit on the

defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff.'" *Duty Free World, Inc. v Miami Perfume Junc., Inc.*, 253 So. 3d 689, 693 (Fla 3d DCA 2018).

Because Lamb has asserted other, overlapping causes of action, her unjust enrichment claim must be dismissed. *See David,* 629 F. Supp. 2d at 1324–25 ("a party may not maintain an action for unjust enrichment if the damages sought are covered by an express contract" and dismissing unjust enrichment claim under Florida law where plaintiff also alleged that manufacturer breached an express warranty); *see also Alce v Wise Foods, Inc.*, 2018 WL 1737750, at \*11 (S.D.N.Y. Mar. 27, 2018) ("Courts in the Second Circuit have recognized that an unjust enrichment claim cannot survive where it simply duplicates, or replaces, a conventional contract or tort claim.") (collecting cases).

Under Florida law, Lamb's claims are subject to dismissal for an additional, independent reason: she did not confer a benefit directly on Cookware, but rather purchased the Pan through a third-party, Walmart. Purchasing a product through a third-party breaks the causal chain necessary to plead a viable unjust enrichment claim. *See American Safety Ins. Serv., Inc. v Griggs,* 959 So. 2d 322, 331 (Fla. 5th DCA 2007) ("The plaintiffs must show they directly conferred a benefit on the defendants."). In *Szymczak v Nissan N. Am., Inc.*, 2011 WL 7095432, at \*20 (S.D.N.Y. Dec. 16, 2011), the court dismissed the Florida unjust enrichment claim because plaintiff did not allege that he purchased the subject vehicle directly from the manufacturer. *Id.* at \* 20.

Accordingly, Lamb's Fourth Cause of Action should be dismissed law.

## POINT VI.
## LAMB FAILS TO PROPERLY ALLEGE A FDUTPA CLAIM

Lamb's revised FDUTPA claim fails for two reasons. First, she still has not satisfied the heightened pleading standards of Federal Rule 9(b) for claims that sound in fraud. Second, what she has alleged is simply a repackaging of her breach of warranty claims—with a few additional conclusory allegations in her Amended Complaint—which does not constitute the type of "unfair" or "deceptive" practices the FDUPTA was designed to address. Accordingly, Lamb's Fifth Cause of Action should be dismissed.

### A.        Plaintiff's Allegations Do Not Meet the Heightened 9(b) Standard.

To establish a claim under the FDUTPA, a plaintiff must establish three objective elements: (1) there was a deceptive act or unfair practice; (2) causation; and (3) actual damages. FLA. STAT. ANN. § 501.201 *et seq.*; *Hertz Corp. v Accenture LLP*, 2019 WL 5537997, at *2 (S.D.N.Y. Oct. 25, 2019). "Deception occurs 'if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Maor v Dollar Thrifty Automotive Group, Inc.*, 303 F. Supp. 3d 1320, 1327 (S.D. Fla. 2017) (citations omitted). The plaintiff must show probable, not possible, deception "'that is likely to cause injury to a reasonable relying consumer.'" *Id.* at 1328 (quoting *PNR, Inc. v Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)). Finally, "[a]n unfair practice is 'one that offends established public policy and . . . [one that] is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id.* (quoting *Hetrick v Ideal Image Dev Corp.*, 372 Fed.Appx. 985, 992 (11th Cir. 2010)).

In New York, courts have determined that if the claim sounds in fraud—like here[5]—the heightened pleading standard under Rule 9(b) applies. *Id*. In *Hertz*, the court found the plaintiff's FDUTPA allegations were insufficient to meet the heightened standard under Rule 9(b), which requires pleading the particular circumstances constituting fraud. *Id*. at *3. So here, Lamb must: (a) specify the statements that were fraudulent; (b) identify the speaker; (c) state where and when the statements were made; and (d) explain why the statements were fraudulent. *Id*.; *see also PB Prop. Mgmt., Inc. v Goodman Mfg. Co., L.P.*, 2013 WL 12172912, at *7 (M.D. Fla. Aug. 23, 2013) (complaint failed to allege with specificity when the misrepresentation occurred).

Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud. *See Tyman v Pfizer, Inc.*, 2017 WL 6988936, at *7-8 (S.D.N.Y. Dec. 27, 2017) (applying Rule 9(b) to plaintiff's FDUTPA claim). Here, Lamb alleges mere conclusory statements and omits specific facts—for example, how and why the alleged misrepresentations were fraudulent, or even which facts show deceptive or unfair practices. *See, e.g.* Complaint, ¶ 76 ("Defendant … engaged in deceptive, unfair, and unlawful trade acts or practices…"); ¶ 77 ("This conduct … constitutes unfair and unconscionable acts and practices."); ¶ 81 ("The above unfair and deceptive acts and practices by the Defendant was [*sic*] immoral, unethical, oppressive, and unscrupulous."); ¶ 83 ("Defendant's actions … were negligent, knowing and willful, and/or wanton and reckless."). Indeed, even Lamb's two "new" allegations in her Amended Complaint are conclusory statements that fail to include factual allegations about how they are fraudulent. *See* Amended Complaint, ¶ 76(a) and (b). For example, Lamb does not

---

[5]     Plaintiff pleads reliance on the nonstick representation on the product label as material to her purchase of Cookware's frying pan. Amended Complaint, ¶ 7. While that allegations is a necessary as part of her claim, standing alone it is insufficient to satisfy her obligations under Rule 9(b).

allege any facts to show that the Pan does not have one of the nonstick surfaces, or something similar, discussed in paragraph 14 of the Amended Complaint—i.e. it does not have a PTFE or Sol-Gel coating. Nor does she allege any facts to support her naked statement that Blue Diamond charged a premium for its $19.88 Pan over those of its competitors. What was the premium? Which competitor's product did she review? Simply put, Lamb has not satisfied Rule 9(b).

Moreover, even under Rule 8(a) and *Iqbal/Twombly*, Plaintiff's FDUTPA cause of action fails to state a claim. Her allegations cannot be "a formulaic recitation of the elements of the cause of action." *Groshare v Wilson's Ltd., Inc.*, 2010 WL 2136434, at *3 (M.D. Fla. May 27, 2010). The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly*, 550 U.S. at 555. Here, Lamb merely parrots the statutory language, omitting any detailed factual basis required under the law. *See* Amended Complaint, ¶¶ 71-84. Florida courts have held that such rote recitations of the FDUTPA elements is insufficient as a matter of law to sustain such a claim.

For example, in *Varnes v Home Depot USA, Inc.*, 2012 WL 5611055 (M.D. Fla. Nov. 15, 2012), the court addressed a complaint similar to the one before this Court. The plaintiff alleged claims for breach of contract, breach of warranty, and violation of FDUTPA. The *Varnes* court granted the motion to dismiss in its entirety, including dismissal of the FDUTPA claim. The court held that the FDUTPA claim "merely restate[d] the allegations of [plaintiff's] breach of contract claim and breach of warranty claims, without noting which facts show deceptive or unfair practices." *Id.* at *1. The court rejected those paragraphs of the claim that were simply "conclusory statements that track[ed] the language of FDUTPA" and went on to hold that "'without ***significant*** allegations of unfair or deceptive conduct,' there can be no claim under

FDUTPA." *Id.* (quoting *Hache v Damon Corp.*, 2008 WL 912434, at *2 (M.D. Fla. 2008))
(emphasis supplied). "Formulaic recitation of the elements under FDUTPA using conclusory
statements is not enough to state a cause of action." *Id.* (citation omitted).

In *Krush Communications, LLC v Network Enhanced Telecom, LLP*, 2014 WL 12625758
(M.D. Fla. Apr. 29, 2014), the court was evaluating a FDUTPA claim on a 12(b)(6) motion. The
court dismissed the claim on multiple grounds, including that the complaint did "not sufficiently
allege 'unfair' or 'deceptive' conduct." *Id.* at *4. The court held that "[a] claim under FDUTPA
applies to unfair or deceptive conduct and does not arise merely from an alleged breach of
warranty or a breach of contract claim." *Id.*; *see also Horton v Woodman Labs, Inc.*, 2014 WL
1329355, at *4 (M.D. Fla. Apr. 2, 2014) ("Horton alleges conclusory statements regarding
GoPro's "unfair, unconscionable, or deceptive practices" but does not include facts that support
these conclusory remarks other than the facts associated with the breach of express warranty
claim."); *Dzielak v Whirlpool Corp.*, 2019 WL 6607220, at *20 (D.N.J. Dec. 5, 2019)
(dismissing plaintiff's FDUTPA claim because it was just a re-packaging of his warranty claim).

Here, like the plaintiffs in *Varnes* and *Krush*, Lamb incorporates by reference the factual
allegations for her breach of warranty and unjust enrichment claims and then recites, in
conclusory fashion, the language of the FDUTPA. Amended Complaint, ¶¶ 71-84. As explained
above, Lamb's two new conclusory allegations do not salvage the claim.

**B.      Plaintiff Sustained No Actual Injury; Thus, her FDUTPA Claim Fails.**

FDUTPA requires a plaintiff to plead and prove an actual injury. Actual injury "may be
shown by allegations that the plaintiff paid a 'price premium' because of the defendant's
misrepresentation or allegations that the plaintiff did not receive the product for which [she]

bargained." *Irvine v Kate Spade and Co.*, 2017 WL 4326538, at *3 (S.D.N.Y. Sept. 28, 2017). Notably, neither New York nor Florida recognize an injury under FDUTPA based on deception alone; the mere fact that a plaintiff was allegedly deceived is not an "actual injury." *See id.*

The gravamen of Plaintiff's FDUTPA claim—like all her other claims—is that she would not have purchased the product but for Cookware's deceptive conduct. Courts have rejected this "induced-to-purchase" theory of injury under both FDUTPA and New York law. *See Irvine*, 2017 WL at * 4 (dismissing plaintiff's FDUTPA claim premised on the "induced-to-purchase" theory); *Braynina v TJX Companies, Inc.*, 2016 WL 5374134, at *10 (S.D.N.Y. Sept. 26 2016) (collecting cases rejecting the induced-purchase theory of injury under New York law).

Similarly, courts evaluating FDUTPA claims have rejected the argument that such claims can be premised on the theory that the plaintiff "'would have paid less than they did,' but for the defendant's allegedly deceptive pricing practices…." *Id.* In *Irvine*, this Court expressly rejected such an assertion because it "amounts to nothing more than the conclusory claim that, as a result of [defendant]'s deceptive conduct, Plaintiffs "'paid more than [they were] subjectively willing to otherwise pay.'" *Id.* (quoting *Belcastro*, 2017 WL 744596, at *5). Stated another way, a plaintiff's subjective disappointment with the product's performance is not compensable under FDUTPA. *See Rollins, Inc. v Butland*, 951 So. 2d 860, 873 (Fla. 2d DCA 2006) ("FDUTPA does not provide for . . . compensation for subjective feelings of disappointment."). Because plaintiff has not properly pleaded actual injury, her FDUTPA claim must be dismissed.

## CONCLUSION

For the foregoing reasons, The Cookware Company (USA) LLC's motion to dismiss should be granted and the Amended Complaint dismissed in its entirety, with prejudice.

Dated:          May 1, 2020

HODGSON RUSS LLP
*Attorneys for The Cookware Company (USA), LLC*

By: */s/Ryan K. Cummings*
Benjamin M. Zuffranieri, Jr.
Ryan K. Cummings
Ryan J. Lucinski (*pro hac vice application pending*)
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202-4040
Telephone: 716.856.4000
Email: *bzuffran@hodgsonruss.com*
Email: *ryan_cummings@hodgsonruss.com*
Email: *rlucinsk@hodgsonruss.com*

26